**Jarvis Dewayne DENMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–05–00454–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 16, 2006.

Discretionary Review Refused July 26, 2006.

Jerald K. Graber, Houston, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Donald W. Rogers Jr., Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

SAM NUCHIA, Justice.

A jury found appellant, Jarvis Dewayne Denman, guilty of aggravated assault and assessed punishment at 13 years. Appellant presents four issues on appeal: (1) the evidence is legally insufficient to support the conviction; (2) the evidence was factually insufficient to support the conviction; (3) the trial court erred in not including an application paragraph in the jury charge on the defense of self-defense with non-deadly force under section 9.31 of the Penal Code [1]; and (4) trial counsel was ineffective because he elicited appellant's prior felony convictions on direct examination. We affirm.

## BACKGROUND

On April 11, 2004, Officer Gerald J. Robertson responded to a 911emergency call from an apartment complex. A neighbor,

---

1. *See* TEX. PEN.CODE ANN. § 9.31 (Vernon 2005).

Steve Lee, had heard a prolonged scuffle coming from the apartment above his and became alarmed after it lasted for a significant amount of time—nearly ten minutes. Robertson, after briefly speaking with Lee, went to appellant's apartment, which he shared with his girlfriend—the complainant—and their son. Robertson found the door ajar, announced his presence, then again announced his presence as he entered. He saw appellant and handcuffed him. Robertson proceeded to the master bedroom where he saw complainant lying on her stomach with the couple's son by her side. Paramedics arrived and determined that complainant had suffered severe head trauma. She was transferred by Life Flight to a nearby hospital where emergency neurosurgery was performed on her. After a lengthy stay at the hospital, complainant was transferred to a long-term care facility where she remains in a persistent vegetative state.

At trial, appellant testified that he kicked complainant in the head in self-defense after a struggle that began when she poked his foot with a knife and pointed a loaded shot-gun at him. Specifically, appellant testified that when complainant pointed the shotgun at him, he ran toward her, kicked open the door to the master bedroom where she was, pushed her down, and grabbed her by the hair. At this point, according to his testimony, complainant broke free and attempted to grab the shotgun. Appellant, still afraid for his life, kicked complainant. Appellant testified that this was the only time that he struck complainant with his feet or fists. Appellant also called six witnesses who each testified about various incidents in the past between appellant and complainant in which complainant had assaulted or threatened appellant with weapons.

### LEGAL SUFFICIENCY

■ Appellant first asserts that the evidence is legally insufficient to support his conviction for aggravated assault with a deadly weapon because he did not have the requisite culpable mental state to cause serious bodily injury to the complainant since he acted out of self-defense. The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979).

Appellant couches the central thrust of his argument in these terms: "[T]he evidence in this case is legally insufficient since *no rational trier of fact* could have found that Appellant intentionally, knowingly, or recklessly caused the serious injuries to the complainant beyond a reasonable doubt." However, what this argument leaves implicit contains what appellant's real contention is, and must be: because appellant was the only witness as to what occurred in the apartment bedroom that night and he testified that he did not intentionally, knowingly, or recklessly injure complainant, no rational jury could have found him guilty.

■ Appellant's argument overlooks what is an axiomatic characteristic of our jurisprudence: "[a]s factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459 (Tex.Crim.App.1991). Because the jury, by finding appellant guilty, implicitly rejected his self-defense theory, it necessarily chose not to believe the testimony concerning such. *Saxton*, 804 S.W.2d at 914. The jury did not have to accept

appellant's self-defense theory—appellant's testimony does not "prove," by itself, a claim of self-defense. The Court of Criminal Appeals has held that a defendant's own statement regarding his intent is not enough to render the evidence, without more, insufficient. *See Sells v. State,* 121 S.W.3d 748, 754 (Tex.Crim.App.2003) (holding that only evidence weighing against jury finding that defendant entered home with no specific intent to commit sexual assault was defendant's own statement and this was not enough to render evidence insufficient). This same line of reasoning applies equally well to appellant's witnesses who testified to past incidents between appellant and complainant—just as appellant's bald statements do not, by themselves, "prove" self-defense, neither did appellant's witnesses testimony, standing alone, "prove" self-defense. We hold that the evidence, when viewed in the light most favorable to the verdict, is legally sufficient such that a rational trier of fact could have found appellant guilty beyond a reasonable doubt. *Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89. Accordingly, appellant's first point of error is overruled.

### FACTUAL SUFFICIENCY

■ Appellant next contends that the evidence is factually insufficient to support his conviction for aggravated assault with a deadly weapon because the he was acting out of self-defense and therefore did not have the requisite culpable mental state. That is, appellant asserts that the evidence is necessarily insufficient because he proved a self-defense and he therefore could not have acted intentionally, knowingly, or recklessly to cause serious bodily injury as required by statute. *See* Tex. Pen.Code Ann. § 22.01–02 (Vernon 2005)(setting out required mental state for an assault).

■ "There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex. Crim.App.2004). "[W]e view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met." *Escamilla v. State,* 143 S.W.3d 814, 817 (Tex.Crim.App.2004) (citing *Zuniga,* 144 S.W.3d at 484–85). When a jury finds the defendant guilty, there is an implicit finding against the defensive theory presented at trial. *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991).[2]

Looking at the evidence adduced at trial, it clear that a rational jury was justified in finding guilt beyond a reasonable doubt. *Zuniga,* 144 S.W.3d at 484–85. Lee testified that he heard a struggle that lasted for five to eight minutes, and repeatedly heard complainant beg her assailant to stop, saying "Oh, please, no. Oh, no, please, no," and also heard an angry male voice. The emergency room doctor from the hospital that first received complainant before she was transferred for emergency brain surgery by Life Flight testified that she was completely unresponsive, unable to communicate, and did not have pupillary

---

2. The State cites *Zuliani v. State* as the correct standard of review when a defense, such as self-defense, is raised. 97 S.W.3d 589, 595 (Tex.Crim.App.2003). However, *Zuniga* made clear, as delineated above, what the correct standard of review should be in reviewing factual sufficiency challenges. Moreover, the *Zuniga* Court explicitly criticized the standard elucidated in *Zuliani* and repeated here by the State. *Zuniga,* 144 S.W.3d at 483–84. It is only when an *affirmative* defense is raised, that *Zuniga* does not apply.

reflex, all consistent with "severe injury to the brain." Moreover, he testified that "she had a contusion or bruise to the left side of the head, abrasions to the left side of the face and nose, and evidence of blood in her nose." In his medical opinion, this was consistent with being struck or hit multiple times in the head. The neurosurgeon who performed the emergency brain surgery on appellant testified that complainant had severe brain swelling which was consistent with a severe impact to the brain. Looking at all this evidence in a neutral light, we conclude that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, and that the contrary evidence is not so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla*, 143 S.W.3d at 817. Accordingly, appellant's second point of error is overruled.

### JURY CHARGE

■■■ Appellant's third point of error is that the trial court erred by failing to include an application paragraph in the jury charge applying the law of self-defense regarding non-deadly force pursuant to section 9.31 of the Penal Code.[3] Article 36.19 of the Code of Criminal Procedure prescribes the standard of review for jury charge errors:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has

not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.

TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2005). The Court of Criminal Appeals has prescribed a two-step test for jury charge errors: "First, an appellate court must determine whether error exists in the charge. Second, the appellate court must determine whether sufficient harm was caused by the error to require reversal of the conviction." *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986). The degree of harm that must be present to require reversal of a case depends upon whether the error was preserved or unpreserved. *Id.* Concerning error that was preserved at trial by a timely and specific objection, that error must have been calculated to injure the rights of the defendant.[4] *Id.* In other words, a defendant must have suffered some actual, rather than theoretical, harm from the error. *Id.*

■■■ A defendant is entitled to an instruction on a defensive issue if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim.App.1991). On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish a defensive issue, the defendant is not entitled to an instruction on the issue. *Id.* Therefore, we must first decide whether there was any evidence that the force used by appellant was not deadly force.

---

**3.** The trial court did instruct the jury on the law of self-defense pursuant to section 9.32 of the Penal Code. *See* TEX. PENAL CODE ANN. § 9.32 (Vernon 2005) (laying out when defen-

dant entitled to use of deadly force in self-defense).

**4.** Appellant properly preserved error.

The instant case is governed by *Ferrel v. State*, where the Court of Criminal Appeals held that for a defendant to be entitled to a non-deadly force instruction under section 9.31(a) of the Code of Criminal Procedure, there must have been some evidence that the instrument used—in *Ferrel*, a full bottle of beer—was not capable of causing death or serious bodily injury in the manner of its use or intended use. 55 S.W.3d 586, 591–92 (Tex.Crim.App.2001). Under those facts, the *Ferrel* Court held that because the beer bottle indisputably caused serious bodily injury to the complainant, the defendant by definition used deadly force. *Id.* at 592.

Under this standard, the reviewing court looks at the end result of the act, and if facts are such that the victim dies (or suffers serious injury), then, by definition, the forced used was deadly. *Id.* Therefore, we hold that because it is clear that complainant suffered "serious bodily injury"—she is in a persistent vegetative state—as contemplated by the statutory language, appellant necessarily used deadly force and was not entitled to an application paragraph as to the non-deadly force defense. *See* Tex. Pen.Code Ann. § 1.07(a)(46) (Vernon 2005) (defining "serious bodily injury" as "bodily injury that creates a substantial risk of . . . any protracted loss or impairment of the function of any bodily member or organ"). Accordingly, appellant's third point of error is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant's final point of error is that his trial counsel was ineffective because he "needlessly admitted into evidence Appellant's prior felony convictions—debit card abuse, forgery, and delivery of a controlled substance—during direct examination of Appellant." Appellant argues that trial counsel could have kept these prior convictions from the jury under relevant evidentiary rules and case law.

It is well-established that Texas follows the *Strickland* test established by the United States Supreme Court. *See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986) (adopting the test prescribed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). The defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Stated differently, the question is whether trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Ex Parte Menchaca*, 854 S.W.2d 128, 131 (Tex.Crim.App.1993). Second, assuming appellant has demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. *Id.* In other words, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

To determine whether appellant's trial counsel performance was so deficient as to be constitutionally unacceptable, we must first determine whether he could have objected to the prior convictions and, under *Theus v. State*, kept them from the jury. *Theus* set out five factors for courts to consider in determining under rule 609 whether a prior conviction's probative value outweighs its prejudicial effect: (1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history, (3) the simi-

larity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue. *Theus,* 845 S.W.2d 874, 880 (Tex.Crim.App.1992).

### The Theus Factors

### 1. Impeachment Value of Prior Crime

The impeachment value of crimes that involve deception or moral turpitude is higher than crimes that involve violence, and the latter have a higher potential for prejudice. *LaHood v. State,* 171 S.W.3d 613, 620 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (citing *Theus,* 845 S.W.2d at 881). It is clear that forgery and debit card abuse are crimes involving deception, therefore this factor militates in favor of admitting those prior convictions into evidence.

Insofar as delivery of cocaine is concerned, Texas case law is sparse; we cannot find a case which holds that the trafficking of drugs is a crime of moral turpitude, and it is quite obviously not a crime of violence. This is not to stay that drug trafficking holds no impeachment value. However, we decline the state's invitation to find delivery of cocaine to be a crime of moral turpitude as it is tangential to the issues in this case, and we refrain from ruling on issues not squarely before us. The first *Theus* factor then cuts against admissibility of the delivery of cocaine conviction.

### 2. Temporal Proximity & Similarity of Crimes

All of appellant's previous offenses occurred within five years of the aggravated assault at issue here; therefore this factor cuts toward admissibility of all three offenses. *See Theus,* 845 S.W.2d at 881 (holding that "second factor will favor admission if the past crime is recent and if the witness has demonstrated a propensity

for running afoul of the law"). Furthermore, none of appellant's prior convictions are similar to the crime of violence at issue here. This also favors admissibility as the jury would not be faced with prior similar offenses and might "convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Id.*

### 3. Importance of Defendant's Testimony and Credibility

■ "Finally, the last two factors are related, because both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id.* "When the case involves the testimony of only the defendant and the State's witnesses ... the importance of the defendant's credibility and testimony escalates." *Id.* As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility. *Id.* These factors also cut toward admissibility of the debit card abuse and the forgery because these offenses go to one's truthfulness and credibility.

And while we decline to decide at this time whether the delivery of drugs is a crime of moral turpitude, it certainly implicates one's credibility and candor on the witness stand. The trafficking of drugs involves at least two layers of criminality: the procurement of drugs in sufficient quantities in order to sell them and the actual sale of the illicit narcotics. This is enough for us to say that when, as here, the defendant is the only possible witness as to the circumstances surrounding the incident, thereby making his credibility and testimony of central importance, a prior conviction of drug trafficking, under the final two *Theus* factors, militates toward admissibility.

### *Application of the* Theus *Factors*

It is clear from the above discussion that the trial court would not have abused his discretion in admitting appellant's prior convictions. Insofar as concerns the debit card abuse and forgery convictions, all five factors militate in favor of admissibility. For the delivery of cocaine conviction, four of the five *Theus* factors favor admissibility. Therefore, because the trial court would have admitted appellant's prior convictions under the *Theus* test, we hold that appellant fails the first prong of the *Strickland* test. Accordingly, his final point of error is overruled.

### CONCLUSION

We affirm the judgement of the trial court.

Justice KEYES concurring in the judgment only.