In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00156-CR**
_____

**TAMMY LYNN JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 1st District Court**
**Jasper County, Texas**
**Trial Cause No. 10621JD**

_____

**MEMORANDUM OPINION**

In this appeal, we consider only one of the two issues that have been raised on its

merits: whether the evidence is sufficient to support the jury's verdict that Tammy Lynn

Jones committed manslaughter. The other issue raised in the appeal, complaining of the

trial court's exclusion of a report, was not perfected for our review.

The State indicted Tammy for murdering her husband, Roy L. Jones. Tammy pled

not guilty, claiming she had acted in self-defense. The jury failed to find that Tammy

murdered Roy, but found her guilty of manslaughter. In Tammy's first issue, she argues

1

the trial court erred by failing to admit a toxicology report that she offered while examining the State's expert pathologist, Dr. Tommy Brown. Because Tammy advances an argument for admitting the report on appeal that she failed to make at trial, we hold that Tammy has not perfected her right to have us review this issue.

In her second issue, Tammy argues the jury could not have rationally rejected her self-defense claim; as a result, she concludes the evidence is insufficient to support the jury's verdict finding her guilty of manslaughter. Based on the evidence admitted at trial, we conclude the jury could rationally reject Tammy's claim that she acted in self-defense; therefore, we affirm the trial court's judgment.

Sufficiency of Evidence

Because issue two is resolved on its merits, we address that issue first. Tammy and Roy were the only witnesses with personal knowledge of what happened; Tammy did not testify at trial. Roy did not testify either, as he was killed by a twenty-two caliber bullet that Tammy fired, which struck him in the chest. According to Dr. Brown, Roy probably lost consciousness about a minute after being shot.

Tammy gave the police her statement on the night of Roy's death. Her statement, admitted without objection, constitutes the bulk of the direct evidence admitted during the trial explaining the circumstances of Roy's death. Both the audio recording of her discussion with police as well as a written transcription were admitted. According to Tammy's statement, she and Roy had an abusive relationship, and he had beaten her

2

many times before the evening that she shot him. The day Roy died, they got into an argument about having his prescription refilled. When Tammy told Roy that the drug store had not filled his prescription, he was angry, accusing her of lying to him about getting the pharmacy to fill the prescription.

Tammy explained that, after Roy left the house that day, she got a pistol from the house because she felt she needed protection. Because she did not know how the pistol worked, she fired it twice, trying to learn how it worked. The night Roy died, she was returning home in her car when Roy used a baseball bat to strike the exterior of her car twice. Tammy stated that she wanted Roy to stop hitting the car, so she took the pistol that she had placed beneath her car seat earlier that day, and then she fired it in Roy's direction. However, Tammy also said that she did not aim the pistol at Roy and that she only intended to scare him. According to Tammy, if she had not fired the pistol: "I don't know what would have happened next or what." Nevertheless, Tammy told the police that she had fired the pistol to make Roy stop beating the car. After explaining what happened, and after the police advised Tammy that she would be charged with murder, Tammy said: "[W]hat was I supposed to do? [ ] Let him kill me?" This statement is the only point during her conversation with the police that Tammy directly suggested that she believed she was in danger of being seriously injured or that she feared for her life. Then, Tammy explained that all of the property in their family belonged to Roy, except for her car.

Other witnesses testified during the trial that Tammy and Roy had an abusive relationship and that they were arguing on the day Roy died. There was circumstantial evidence admitted during the trial showing that Roy fell to the ground after being shot near a gate that led to the Joneses' home and that Tammy's car had been hit with a baseball bat found near Roy's body. Officers, who investigated the shooting, testified that the Joneses' vehicles were found near a gate to the fence around the Joneses' house. Testimony and exhibits of the scene showed the outside mirror on the driver's side of Tammy's car had been damaged. Another witness, Jim Okun, testified that on the evening Roy died, he and Roy were sitting in Roy's pickup at a house across the highway from the Joneses' home. According to Okun, Tammy drove up and began arguing with Roy; at that point, Tammy and Roy left in their vehicles.

Tammy contends that under these circumstances, no rational jury could have found she did not act in self-defense. When a defendant challenges the sufficiency of the jury's rejection of an affirmative defense, we view the evidence in the light most favorable to the State, and determine:

- whether a rational fact finder could find the defendant guilty of committing the essential elements of the offense beyond a reasonable doubt; and
- whether a rational fact finder could reject the defendant's affirmative defense.

4

*See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *see also* Tex. Penal Code Ann. § 9.31 (West 2011) (defining self-defense).

A defendant asserting a claim of self-defense has the burden of production and must bring forth some evidence to support the particular defense. *See* Tex. Penal Code Ann. §§ 2.03(c), 9.02, 9.31, 9.32 (West 2011); *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). But, once the defense is raised, the State bears the burden of persuasion to disprove the defense. *Zuliani*, 97 S.W.3d at 594. The State's burden is not one that requires the production of evidence; rather, it requires the State to prove its case beyond a reasonable doubt. *Id.* The issue of self-defense is a fact issue to be determined by the jury, which can freely accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913-14. A jury's guilty verdict "is an implicit finding rejecting the defendant's self-defense theory." *Id.* at 914.

On appeal, Tammy has not argued the State did not prove the elements of manslaughter. Instead, she contends that the State failed to meet its burden to prove that she did not act in self-defense. With respect to the State's burden of proving that Tammy did not act in self-defense, the jury was instructed that the State was required to prove that Tammy "did not believe her conduct was immediately necessary to protect herself against [Roy's] use or attempted use of unlawful deadly force;" or that Tammy's "belief was not reasonable."

Given all of the reasonable inferences available from the evidence, the jury could reasonably find that Tammy did not believe she had to shoot Roy to protect herself from him. The night Roy died, Tammy repeatedly told police that she had fired the pistol only to scare Roy; thus, the jury could infer that she shot at Roy to scare him so he would stop hitting her car—her only possession—not because she subjectively believed that he was about to hit her. The circumstantial evidence together with all of the circumstances that led to the shooting allowed the jury to conclude that Tammy fired the pistol to protect her property, not to protect herself.

Additionally, Tammy indicated that she got the pistol shortly after she and Roy argued that day; fired it to familiarize herself with how it worked; and placed it under the seat of her car. The evidence further shows that, even after leaving their house where they argued, Tammy later pursued Roy by finding him at a neighbor's house, which precipitated even further argument. That circumstance offers additional support for the jury's conclusion that Tammy shot Roy shortly after she contacted him at a neighbor's home, an additional circumstance that tends to show Tammy had not acted out of a fear for her safety.

Finally, after shooting Roy, Tammy never directly stated that she thought Roy was about to hit her with the bat; even had she done so, the jury could have considered all of the other circumstances in deciding to reject such a statement. *See Sells v. State*, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003) (concluding that defendant's statement that

he did not enter home with the specific intent to commit sexual assault was not enough to render the evidence insufficient).

We conclude that the evidence that Tammy acted in self-defense was not so strong that it greatly preponderates against the jury's finding that Tammy was guilty of committing reckless manslaughter. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (rejecting argument that jury verdict was supported by insufficient evidence where the defendant asserted a claim of justification to protect his personal property); *Denman v. State*, 193 S.W.3d 129, 133 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that jury could reject defendant's statement that he had acted in self-defense where evidence included the defendant having been assaulted and threatened by the complaining witness). Having carefully reviewed the testimony from the trial, we conclude the jury's determination that Tammy was guilty of reckless manslaughter was not irrational. We further conclude that the circumstantial evidence allowed the jury to conclude, beyond reasonable doubt, that Tammy did not believe her conduct was immediately necessary to protect herself from Roy. Consequently, we hold that the evidence is sufficient to support the jury's verdict finding Tammy guilty of reckless manslaughter. We overrule issue two.

## Exclusion of Toxicology Report

In her first issue, Tammy contends the trial court erred in excluding a toxicology report, which indicated that Roy had a blood alcohol level of .231 milligrams per deciliter

and a methamphetamine result of 14 nanograms per milliliter. Tammy's attorney offered the toxicology report during his cross-examination of Dr. Brown, the State's expert pathologist. After the State objected, asserting the report was hearsay because it was not a report prepared by Dr. Brown, Tammy's attorney argued that the report was admissible.

Specifically, at trial, Tammy's attorney argued that the report was admissible because Dr. Brown relied on it in formulating his opinion about whether the gunshot wound to Roy's chest had caused Roy's death, asserting that an expert "can rely on what would otherwise be inadmissible hearsay . . . and can talk about it."[1] *See* Tex. R. Evid. 705.[2] When the court ruled that it would allow the expert to say that he had relied on the toxicology report, but would not allow the expert to testify regarding the results of the report, Tammy's attorney then offered another argument for admitting the report. Tammy's attorney explained to the trial court that the State had provided the report to him during discovery, making the report admissible because the State was "vouching for its authenticity." However, Tammy failed to advance either of the arguments that she

[1]At trial, Tammy's attorney did not reference Rule 705 of the Texas Rules of Evidence to support her argument that the toxicology report was admissible. However, the trial court, based on the argument advanced by Tammy's attorney, would have understood that her counsel intended to reference Rule 705.

[2]Rule 705 provides that during cross-examination, an expert may be required to disclose his underlying facts or data in formulating his opinion; but, if the facts or data would be inadmissible, the trial court "shall exclude [them] if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial." Tex. R. Evid. 705.

made at trial in her appeal. Instead, on appeal, Tammy argues that the trial court should have admitted the toxicology report under:

1. Rule 107 of the Texas Rules of Evidence, the rule of optional completeness; or

2. Rules 803(4) and 803(8) of the Texas Rules of Evidence, which are, respectively, hearsay exceptions for statements made for the purposes of a medical diagnosis and for public records and reports; or

3. The Sixth Amendment of the United States Constitution.

*See* U.S. Const. amend. VI; Tex. R. Evid. 107, 803(4), 803(8).

In seeking to overturn the trial court's ruling regarding the toxicology report, the basis of the arguments that Tammy raises on appeal are not the same as the arguments she made during trial. Because the arguments she raises on appeal were not first raised at trial, she has failed to preserve them for appellate review. Tex. R. App. P. 33.1(a)(1) (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request). These same error preservation rules apply to Tammy's complaint that the Sixth Amendment required the trial court to admit the toxicology report. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that defendant failed to preserve Sixth Amendment complaint because he did not object at trial on the constitutional ground).

Because Tammy did not present the arguments she made at trial regarding the admissibility of the toxicology report for our review, and because the arguments she has

9

made regarding issue one were not first presented in the trial court, we overrule her first issue. Having overruled both of Tammy's issues, the trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on June 27, 2012
Opinion Delivered November 28, 2012
Do Not Publish

Before Gaultney, Kreger, and Horton, JJ.