**Opinion issued October 11, 2016**



In The

# Court of Appeals

For The

# First District of Texas

—————————————————

**NO. 01-15-00914-CR**

—————————————————

**TONY GONZALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1438405**

---

## MEMORANDUM OPINION

Tony Gonzales and his roommate, Juan Carlos Leiva-Delgado, went to the

parking lot of a neighborhood bar and drank in their car. About an hour after they

arrived, Leiva was dead from multiple stab wounds and blunt head trauma. The

police found Gonzales hiding in the bushes with blood on his shirt and a broken

knife in his pocket. At his murder trial, Gonzales argued self-defense. The jury rejected that defense and found Gonzales guilty. The trial court sentenced him to 65 years' confinement.

On appeal, Gonzales argues for an acquittal because there is legally insufficient evidence to support the jury's rejection of his self-defense claim. Alternatively, if we do not reverse his conviction, he argues that we should modify the judgment of conviction to delete an erroneous deadly-weapon finding that the crime was committed with a firearm.

We modify the judgment to delete "firearm" and replace it with "knife." We affirm the judgment as modified.

### Background

Several years ago, Leiva moved in with Gonzales and Gonzales's common-law wife. The men became close friends and often drank and socialized together. One night they bought some beer and drove to the parking lot of a neighborhood bar to drink in Leiva's car.

The bar's surveillance video was admitted into evidence. It shows that, about one hour after Leiva parked his car in the bar parking lot, Leiva quickly jumped out of his car, and Gonzales chased him. Leiva fell to the ground between two vehicles. Gonzales ran to the same place and dropped down between the cars. Both

2

men were out of the camera's view for fourteen seconds. Then, Gonzales stood up, said something to bar patrons who were walking by, and ran off.

When emergency personnel arrived several minutes later, they found Leiva dead in the same location where he had fallen. They also found Gonzales squatting in some bushes near Leiva's parked car. He claimed to know nothing about Leiva or Leiva's vehicle. After connecting Gonzales to the vehicle, noting blood on his shirt and in the car, and finding a broken knife handle in his pocket, the police arrested him. The indictment alleged that Gonzales caused Leiva's death by stabbing him with "a knife" or "a box cutter" or striking him with "his hand" or "an unknown object."

At trial, Gonzales testified that the two friends were sitting in Leiva's car talking about soccer when they began to argue over which of their two favorite teams was better and which had the best star player. According to Gonzales, Leiva unexpectedly lunged at him from the driver's seat and attempted to stab him with a knife. Gonzales blocked the blow with his left hand and hit Leiva in the throat with his right hand, causing the knife to fall. Gonzales picked up the knife and, according to his testimony, stabbed Leiva in self-defense. Gonzales was asked on cross-examination whether he had stomped on Leiva, causing his head injury. He responded, "I don't remember. I don't recall. No."

The State argued that Gonzales repeatedly stabbed Leiva in the car, chased him through the parking lot—as demonstrated on the surveillance video—and, when he got to Leiva's fallen body, stomped on Leiva, causing his blunt head trauma. The State presented evidence suggesting that the two men may have been fighting over a woman they both had dated.

That woman testified at trial. She said that she dated Leiva, their relationship ended amicably, then she began an affair with Gonzales. She testified that she became afraid of Gonzales because he was very jealous. Gonzales told her that she had to stay away from Leiva. She ended the affair with Gonzales because of his jealousy, but he continued to text her. There was evidence of texts between the woman and Gonzales the same day that Gonzales stabbed Leiva. In those messages, Gonzales indicated that he wanted to continue the relationship, while she maintained that she wanted him to leave her alone.

Gonzales conceded that he had told the woman to stop socializing with Leiva and that she ended their affair because of his jealousy. But he denied that he and Leiva had any animosity toward each other as a result. According to Gonzales, the fight in the bar parking lot was about soccer players, not the woman.

The medical examiner testified about Leiva's injuries. He died from stab wounds and blunt head trauma. Leiva had seven stab wounds to his chest, which

were consistent with the size of the knife found at the scene. He also had defensive stab wounds and other superficial injuries to his arms.

Regarding his head wound, the medical examiner described it as a "pattern contusion," meaning that there is a visible pattern on the wound that would match the pattern of whatever object struck Leiva's head. She agreed that the pattern might match a shoe sole, but she testified that no effort was made to analyze whether it matched Gonzales's shoe. She testified that the pattern contusion on Leiva would not be consistent with him simply falling to the parking lot's gravel surface because gravel does not have the "mosaic pattern that we saw on the injury."

The jury was given an instruction on self-defense, informing it that "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force." The jury was instructed that it should return a verdict of not guilty if it had "a reasonable doubt as to whether or not [Gonzales] was acting in self-defense." The jury found Gonzales guilty of murder "as charged in the indictment," implicitly rejecting his self-defense claim. Gonzales elected to have the trial court sentence him, and he received a sentenced of 65 years' confinement. The judgment of conviction included the following deadly-weapon finding: "Yes, a firearm."

5

Gonzales appeals his conviction.

## Sufficiency of Evidence on Self-Defense

In his first issue, Gonzales contends that there is legally insufficient evidence to support the jury's rejection of his self-defense claim.

## A. Standard of review

We review sufficiency of the evidence using the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318−20, 99 S. Ct. 2781, 2788–89 (1979). *See Brooks v. State*, 323 S.W.3d 893, 898–912 (Tex. Crim. App. 2010). Under that standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider all reasonable inferences that may be drawn from the evidence in making our determination, including all direct and circumstantial evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is insufficient in four circumstances: (1) no evidence exists that is probative of an element of the offense in the record; (2) only a "modicum" of evidence exists that is probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the alleged acts do not

establish the criminal offense charged. *See Jackson*, 443 U.S. at 314–15, 320; *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013).

The jury has the exclusive role of evaluating the facts, the credibility of the witnesses, and the weight a witness's testimony should be given. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The jury may choose to believe all, some, or none of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.). And the jury alone must reconcile any conflicts in the evidence. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).

Under the *Jackson* standard, we defer to the factfinder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. If there are conflicts in the evidence, we must presume the factfinder resolved the conflicts in favor of the verdict and defer to that determination, as long as it is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. If the evidence is insufficient, we must reverse and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

**B. Self-defense as justification for deadly force**

The use of deadly force is justified if a person believes that it is immediately necessary to protect himself against another's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a)(2)(A). To support a self-defense claim, the defendant must produce some evidence to show that he acted in self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). If the defendant presents such evidence, the State must disprove the self-defense claim beyond a reasonable doubt. *Id.* The State's burden is not one of production but, instead, of persuasion, meaning that the State must prove its case beyond a reasonable doubt. *See Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). The jury implicitly rejects the self-defense claim if it finds the defendant guilty. *Zuliana*, 97 S.W.3d at 594.

**C. Legally sufficient evidence supports jury's verdict**

Gonzales argues that there was no evidence to contradict his self-defense claim and, as a result, no rational jury could have found beyond a reasonable doubt that he did not act in self-defense. In other words, no reasonable jury could have rejected his self-defense theory to find him guilty of murder. We conclude that there was legally sufficient evidence to support the jury's verdict.

Gonzales testified that there was no animosity between the two men about the woman they both had dated. He said the two were arguing about soccer when

8

Leiva unexpectedly lunged at him with a knife. But there was evidence that Gonzales was trying to continue the affair, the woman was shunning Gonzales because of his jealousy, and Gonzales was trying to prevent her continued contact with Leiva. The jury, as factfinder, was free to weigh the credibility of the witnesses' testimony and believe or disbelieve any portion of their testimony. *See Davis*, 177 S.W.3d at 358. The jury could have disbelieved Gonzales about the source of the argument and the events in the car that led to the stabbing. *See Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding jury can choose to disbelieve witness even if witness's testimony is uncontradicted).

Even if the jury accepted Gonzales's explanation that Leiva used the knife first, Gonzales testified that he had effectively disarmed Leiva before grabbing the knife and stabbing Leiva. From this testimony, the jury reasonably could have concluded that the use of deadly force was no longer immediately necessary.

Additionally, the jury reasonably could have concluded that Gonzales's self-defense claim was not credible given the surveillance video showing him chase Leiva through the parking lot (after stabbing him) instead of taking a more defensive action, like remaining in the car and locking the doors. *Cf. Sanchez v. State*, 418 S.W.3d 302, 309–10 (Tex. App.—Fort Worth 2013, pet. ref'd) (noting that defendant chasing complainant is inconsistent with claim of self-defense). The

evidence of Leiva's head wound, combined with the video showing Leiva falling between two cars and Gonzales disappearing in the same location, reasonably could be interpreted to support the conclusion that Gonzales caught up to Leiva where he had fallen and stomped on him, thereby causing the blunt head trauma described by the medical examiner. From all of this evidence, the jury reasonably could have inferred that Gonzales was the aggressor and rejected his self-defense explanation. *See Alvarado v. State*, 822 S.W.2d 236, 240 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (holding that sufficient evidence supported jury determination that appellant was aggressor and rejection of self-defense theory).

Based on all of the evidence presented at trial, viewed in the light most favorable to the verdict, we hold that a rational jury could have found the essential elements of the offense of murder beyond a reasonable doubt and also could have found against Gonzales on the self-defense issue beyond a reasonable doubt by disbelieving his testimony. *See Saxton*, 804 S.W.2d at 914; *Denman v. State*, 193 S.W.3d 129, 132–33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

We overrule Gonzales's first issue.

## Deadly-Weapon Finding

In his second issue, Gonzales contends that "the judgment erroneously included a finding that [he] used a firearm to commit the offense" and asks that we modify the judgment to delete that finding. The State agrees that the firearm

reference is erroneous and that we should modify the judgment to delete the specific reference to a firearm. The State, nonetheless, contends that we should retain the more general finding that a deadly weapon was used, noting that the indictment alleged use of a deadly weapon—described as a knife, Gonzales's hand, an unknown object, or a box cutter—and that the jury convicted Gonzales of murder "as charged in the indictment."

Appellate Rule 43.2(b) authorizes appellate courts to modify trial court judgments and affirm them as modified. TEX. R. APP. P. 43.2(b). Appellate Rule 43.6 authorizes us to make any other appropriate orders that the law and the nature of the case require. TEX. R. APP. P. 43.6. The Court of Criminal Appeals has affirmed judgments modified by appellate courts to reflect the juries' deadly-weapon findings, including one in which the indictment identified a deadly weapon and the jury found the defendant guilty "as charged in the indictment." *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (citing *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd)). Here, the indictment listed a knife as a deadly weapon used to commit the offense, the jury received evidence that Gonzales stabbed Leiva with a knife, causing his death, and the jury found Gonzales guilty "as charged in the indictment."

We sustain Gonzales's second issue and modify the judgment concerning the deadly-weapon finding to delete "firearm," which we replace with "knife."

11

## Conclusion

We affirm the judgment as modified.

Harvey Brown
Justice

Panel consists of Justices Jennings, Keyes, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).