

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00440-CR

RODERICK JORDAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 363rd District Court
Dallas County, Texas
Trial Court No. F-12-59308-W, Honorable Tracy F. Holmes, Presiding

December 22, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Roderick Jordan appeals from his murder[1] conviction following a bench trial. Through one issue, appellant contends the evidence was insufficient to support his conviction. We will affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 19.02 (West 2015).

Background

Appellant was indicted for the murder of James Gregory Lynn.  He pled not guilty and went to trial before the trial court.  After hearing the evidence and arguments of the parties, the court found appellant guilty as charged and assessed punishment at twenty years of imprisonment.

A Dallas police officer testified he found Lynn's body in the cab of appellant's eighteen-wheeler truck after a traffic stop.  The medical examiner testified Lynn suffered some seventy "sharp force" injuries, most of which were superficial.  One neck wound and a "cluster" of wounds to the chest cavity were more serious and caused Lynn's death.  Most of the evidence concerning the circumstances of Lynn's death came from appellant's testimony.  He admitted he stabbed Lynn and cut his throat but testified he did so in self-defense.

Appellant testified to events that transpired in or around his truck at truck stops near the intersection of interstate highways 20 and 45 southeast of Dallas, and spanned from the early morning hours of a Saturday to mid-afternoon Sunday.  Appellant testified he smoked crack cocaine during most of that period and transacted with several people, including Lynn, over the course of those hours to pay for more cocaine.  He obtained cash from a "loadable" credit card and even illegally sold gasoline from his truck to finance additional cocaine purchases.

One man, Anthony Douglas, testified to two of the illegal fuel sales and told the court appellant and Lynn argued about money.  A local woman, described at trial as a drug user and prostitute, testified to drug transactions with appellant and to his anger

2

about being "ripped off" during a drug deal. Appellant also told the court that at some point, Lynn took the tires off appellant's truck and replaced them with used tires. Appellant admitted he was "high" and did nothing to prevent Lynn's action. Appellant testified the two men disagreed over the tires and money apparently owed by appellant to Lynn.

Appellant testified that while the men were trying to resolve the money issue, Lynn got into appellant's truck through the driver's side door. Appellant was "under the hood messing with the truck, trying to get it started with a screwdriver." He said that when he entered his truck, Lynn had a knife. Appellant asked him why he had the knife and testified Lynn responded, "I don't know what you was doing out there." Appellant testified he drove out of the lot and "[he] knew . . . something shady was going on . . . ." He testified he then saw Lynn had "a knife in his left hand" and he raised it "[a]s if to cut me with it." Appellant testified he was afraid for his life so he retrieved a knife from his tools. The men fought in the "cab portion of the truck."

Appellant described the fight as long and bloody. He "hit" Lynn with his knife multiple times. But, appellant told the court, he held on to Lynn's left hand throughout their fight even though Lynn repeatedly "leaped" and "charged" for him. Appellant eventually "reached down" and "jumped behind him and cut his throat." Appellant was not injured during the fight. Appellant said he then drove his truck for some seven hours following Lynn's death, looking for a place to "dump" Lynn's body. He was eventually stopped by the police officer because one of the truck's tires was smoking. At trial, appellant admitted he initially told a detective he "didn't do it" and he "lied about that situation."

3

On appeal, appellant contends the State failed in its burden of persuasion to refute his defense that he acted only in self-defense and consequently, the evidence is insufficient to support his conviction for murder.

Analysis

The initial burden to produce evidence supporting self-defense rests with the defendant. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Once the defendant produces some evidence, the State bears the ultimate burden of persuasion to disprove the raised defense. *Zuliani,* 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913-14. This burden of persuasion does not require the State to produce evidence, but instead requires that the State prove its case beyond a reasonable doubt. *Zuliani,* 97 S.W.3d at 594; *Saxton,* 804 S.W.2d at 913. If the fact finder finds the defendant guilty, then it implicitly finds against the defensive theory. *Saxton,* 804 S.W.2d at 914.

In reviewing the sufficiency of the evidence to support the fact finder's rejection of a defensive issue, "we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id.*; *Gonzalez v. State*, No. 05-13-00630-CR, 2014 Tex. App. LEXIS 7584, at *14-16, (Tex. App.—Dallas July 14, 2014, no pet.) (mem. op., not designated for publication). *See also Jackson v. Virginia,* 443 U.S. 307, 318-20, 99 S. Ct. 2781, 61 L.

4

Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 894-913 (Tex. Crim. App. 2010) (plurality op.) (sufficiency standard). The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009).

In conducting our review, we recognize that the trier of fact is the sole judge of the credibility of witnesses and the weight to be given a witness's testimony, and it is the trier of fact's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319; *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume the trier of fact resolved any conflicts in the evidence in favor of the verdict and, so long as such resolution is rational, we defer to that resolution. *Brooks,* 323 S.W.3d at 894-95; *Jackson,* 443 U.S. at 326. The issue of self-defense is a fact issue to be determined by the finder of fact, and the fact finder is free to accept or reject any defensive evidence on the issue. *Saxton,* 804 S.W.2d at 913-14 (defensive evidence that is "merely consistent with the physical evidence at the scene" will not render the State's evidence insufficient because the credibility determination of such evidence is solely within fact finder's province).

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State,* 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Therefore, in reviewing the record, we treat direct and circumstantial evidence equally. *Clayton,* 235 S.W.3d at 778; *see also Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (recognizing that circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt).

5

A person commits murder if he intentionally or knowingly causes the death of an individual or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(2) (West 2015). Under certain circumstances, however, self-defense justifies the use of deadly force. *Gonzalez*, 2014 Tex. App. LEXIS 7584, at *14-16, citing *Morales v. State,* 357 S.W.3d 1, 7 (Tex. Crim. App. 2011). Such force is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.,* citing TEX. PENAL CODE ANN. § 9.31(a) (West 2015). A person is justified in using deadly force against another (1) if he would be justified in using force against the other under section 9.31 of the penal code, and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.,* citing TEX. PENAL CODE ANN. § 9.32(a)(1), (a)(2)(A) (West 2015). The actor's belief in the necessity of deadly force is presumptively reasonable if certain requirements are met. *See* TEX. PENAL CODE ANN. § 9.32(b).

Appellant's testimony, coupled with that of the medical examiner, demonstrated that he intentionally or knowingly caused Lynn's death by stabbing him multiple times and cutting his throat. Appellant does not contest the sufficiency of that evidence to support his conviction for murder. By his testimony also, appellant asserted he stabbed Lynn to prevent Lynn from killing him. The State concedes that, by his testimony and other evidence in the record, appellant met his initial burden of production to bring forth some evidence to support self-defense. *Zuliani,* 97 S.W.3d at 594.

6

On appeal, the State challenges appellant's attempt to use penal code section 9.32(b)(1)(A), under which appellant's asserted belief that deadly force was immediately necessary would be presumed to be reasonable if, among other requirements, appellant knew or had reason to believe Lynn "unlawfully and with force entered, or was attempting to enter unlawfully and with force, [appellant's] occupied…vehicle" or "unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's . . . vehicle."  TEX. PENAL CODE ANN. § 9.32(b)(1)(A). We agree with the State.  Appellant testified he did not want Lynn to get into his truck but said only that Lynn entered through the driver's side door after appellant told him the passenger door was broken.  As the State notes on appeal, appellant did not point to any evidence Lynn used force or attempted to use force to enter the truck, or to later expel appellant by force.  The State also notes that at the time Lynn climbed into the truck, the vehicle was not occupied.  We add that appellant did not testify Lynn used the knife to gain entry into the truck.  The trial court was not required to view appellant's actions as showing a presumptively reasonable belief deadly force was immediately necessary under section 9.32(b)(1)(A).

The facts of this case are like those in *Saxton*, 804 S.W.2d at 911, in that the only eyewitness testimony to Lynn's death came from appellant, who testified Lynn was the aggressor and he stabbed Lynn and cut his throat only in self-defense.  As noted, however, even in that circumstance, the finder of fact may reject the claim of self-defense, and our task is to determine whether consideration of all the evidence, viewed in the light most favorable to the verdict, allowed a rational trier of fact to do so and find against appellant on the self-defense issue beyond a reasonable doubt.  *Saxton*, 804

7

S.W.2d at 914; *Gonzalez,* 2014 Tex. App. LEXIS 7584, at *15-16; *see also London v. State,* 325 S.W.3d 197, 203 (Tex. App.—Dallas 2008, pet. ref'd); *Denman v. State,* 193 S.W.3d 129, 132-33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (both noting that defendant's testimony, by itself, does not prove a claim of self-defense).

Appellant points to evidence he asserts supports his testimony: (1) a knife with Lynn's DNA was recovered from the cab of the truck, evidence appellant argues shows Lynn had a knife, just as appellant testified; (2) the knife appellant said he used was found on the dashboard, where appellant said he placed it, and it tested positive for blood; and (3) the fingernail scrapings taken from Lynn's body contained no DNA other than Lynn's, a finding consistent with appellant's version of the events because appellant testified he held on to Lynn's hand as the two fought in the tight space of the cab. As noted, however, a mere consistency between appellant's testimony of self-defense and physical evidence at the scene does not render the State's evidence of guilt insufficient. *Saxton,* 804 S.W.2d at 913-14. The physical evidence appellant cites, while consistent with his version of the events, does not preclude the court's exercise of its function to evaluate the credibility of appellant's testimony. Moreover the physical evidence appellant cites is not necessarily inconsistent with appellant's guilt. That Lynn had a knife does not require the conclusion appellant acted in self-defense, and did not preclude the court from rejecting appellant's defense.

Other evidence before the court cast doubt on appellant's version of the events and supported the trial court's finding of guilt and implicit rejection of appellant's defense. The evidence demonstrated that Lynn suffered a brutal attack. The medical examiner testified some of Lynn's seventy-odd injuries, particularly those on his hands

and forearms, could be characterized as defensive wounds. An officer testified he saw "large amounts of blood all over the inside of the cab" and the blood was still "dripping off the door when they opened it up." Yet, despite his testimony that Lynn leapt and charged at him in the truck's cab, appellant sustained no injuries at all. Photographs of Lynn's injuries and the absence of injuries to appellant were in evidence. Lynn was a large man, and the court was not required to find credible appellant's testimony that he bore no signs of engaging in such a struggle because he kept hold of Lynn's hand throughout.

Further, the version of events appellant presented to the trial court was not what he told police after the events. Appellant admitted he told the detective a different story. When asked, he said, "Well, I told the detective about—yeah, I was—what I told the detective is that I didn't do it. And I did do it because I was scared, and I told the detective I was trying to—." He later said, "I lied about that situation." The court was entitled to consider appellant's differing versions of the events when evaluating his assertion at trial that he acted in defense of his own life. *See King v. State,* 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (finding the defendant's false statements to the media indicated his consciousness of guilt as well as an attempt to cover up the crime); *Couchman v. State,* 3 S.W.3d 155, 164 (Tex. App.—Fort Worth 1999, pet. ref'd) (concluding defendant's change of story was evidence of consciousness of guilt and jury was reasonable to conclude defendant lied because he had "something to hide").

Finally, the evidence provided other ready explanations for appellant's deadly conduct toward Lynn. Both the local woman and Douglas testified appellant was angry and "upset" about the drug transactions, money apparently owed to Lynn, and Lynn's

removal of the tires from appellant's truck. Neither witness testified Lynn was angry or showed any animosity toward appellant. The detective said appellant told him he was "pissed off" at Lynn, although appellant could not recall that statement when questioned about it at trial.

## Conclusion

When the trier of fact exercises its role of judging the credibility of witnesses, it can choose to believe all, some, or none of the testimony of a particular witness. *See Denman,* 193 S.W.3d at 132. Considering all the evidence in the light most favorable to the trial court's verdict, we conclude a rational trier of fact could have found appellant guilty of murder beyond a reasonable doubt by finding credible the evidence favoring conviction and finding not credible the evidence favoring self-defense. *See Smith v. State,* 352 S.W.3d 55, 63 (Tex. App.—Fort Worth 2011, no pet.) (also finding evidence sufficient to support rejection of self-defense despite defendant's testimony). The evidence was sufficient to support the trial court's finding of guilt and its implicit rejection of appellant's argument he acted in self-defense.

We overrule appellant's sole issue on appeal and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.