PD-1172-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/8/2015 2:20:41 PM
Accepted 10/8/2015 5:00:10 PM
ABEL ACOSTA
CLERK

**PD-1172-15**

IN THE TEXAS COURT OF CRIMINAL APPEALS

CRISTAL PAULLETT RICHARDSON
*APPELLANT*

vs.

THE STATE OF TEXAS
*APPELLEE*

FROM THE FIFTH COURT OF APPEALS
CAUSE No. 05-14-00523-CR

APPEAL FROM CRIMINAL DISTRICT COURT No. 6 OF
DALLAS COUNTY, TEXAS, CAUSE NO. F-13-00479-X

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

October 8, 2015

ABEL ACOSTA, CLERK

## **Ground for Review**

The State in this case enhanced the indictment with previous felony convictions for driving while intoxicated and aggravated assault. But the DWI was only punishable as a felony because it, too, was enhanced by the aggravated assault. Did the State thus impermissibly use the same prior conviction more than once in the same prosecution?

# Table of Contents

Ground for Review ...............................................................................2

Table of Contents ...............................................................................3

Index of Authorities ...........................................................................4

Identity of Parties and Counsel ..........................................................5

Statement Regarding Oral Argument ..................................................6

Statement of the Case and Procedural History....................................7

Argument............................................................................................11

    The State in this case enhanced the indictment with previous felony convictions for driving while intoxicated and aggravated assault. But the DWI was only punishable as a felony because it, too, was enhanced by the aggravated assault. The State thus impermissibly used the same prior conviction more than once in the same prosecution...............................................................................11

    I.    The indictment, the enhancements, and the objection.........11

    II.    The court of appeals's holding ............................................12

    III.    A distinction without difference is no distinction at all .......14

Prayer ................................................................................................17

Certificate of Service..........................................................................18

Certificate of Compliance ..................................................................18

Appendix.............................................................................................19

# Index of Authorities

## Cases

*Ballard v. State*, 149 S.W.3d 693 (Tex. App.—Austin 2004, pet. ref'd) ........ …………………………………………………………..14, 15, 16

*Hernandez v. State*, 929 S.W.2d 11 (Tex. Crim. App. 1996)..13, 14, 15, 16

*McWilliams v. State*, 782 S.W.2d 871 (Tex. Crim. App. 1990) .........13, 14

*Ramirez v. State*, 527 S.W.2d 542 (Tex. Crim. App. 1975) ...............13, 14

*Richardson v. State*, No. 05-14-00523-CR, 2015 WL 4749181 (Tex. App.—Dallas 2015)..................................................................10, 14, 16

*Wisdom v. State*, 708 S.W.2d 840 (Tex. Crim. App. 1986) ......................13

## Statutes

TEX. PEN. CODE § 12.35..................................................................11, 16

TEX. PEN. CODE § 12.42..................................................................11, 16

TEX. PEN. CODE § 12.46........................................................................12

TEX. PEN. CODE § 19.02..........................................................................7

## Identity of Parties and Counsel

For Appellant Cristal Paullett Richardson:

PAUL JOHNSON
*Trial counsel of record*
900 Jackson Street, Suite 650
Dallas, Texas 75379

LORI ORDIWAY
*Original appellate counsel of record*
P.O. Box 793991
Dallas, Texas 75379

BRUCE ANTON
BRETT ORDIWAY
*Substitute appellate counsel of record*
SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201

For Appellee the State of Texas:

JOSH HEALY
BRANDI MITCHELL
*Trial counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 N. Riverfront Blvd.
Dallas, Texas 75207

ANNE B. WETHERHOLT
*Appellate counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial court:

CRIMINAL DISTRICT COURT NO. 6 OF DALLAS COUNTY, TEXAS
THE HONORABLE JEANINE HOWARD PRESIDING

## Statement Regarding Oral Argument

Oral argument is waived.

## Statement of the Case and Procedural History

The complainant went out partying with his friends on April 27, 2012, driving around Dallas, drinking, and doing drugs. (RR4: 41-45, 78; SX3). They saw Appellant at a convenience store and struck up a conversation, and soon thereafter Appellant invited the group to continue the party at her motel room. (RR4: 45-46). They stayed up all night drinking and consuming a variety of drugs. (RR4: 47-50). Eventually, though, the others left, and only the complainant and Appellant remained. (RR4: 51).

At approximately 5:30 p.m. on April 28, 2012, the motel security guard discovered Appellant in the hallway naked and covered in blood. (RR4: 93-94). The complainant was subsequently discovered dead in the room, exhibiting over 100 stab wounds and castrated. (RR4: 106, 130-31; RR5: 176-85, 193).

In Cause No. F13-00479-X (Dallas County), Appellant was indicted on August 19, 2013, for the first-degree felony offense of murder. (CR: 8). *See* TEX. PEN. CODE § 19.02(b)(1) & (2); TEX. PEN. CODE § 19.02(c). The State enhanced the charge in the indictment with allegations that Appellant had previously been convicted of two prior felony offenses. (CR: 8).

On April 7, 2014, the trial court conducted voir dire, and a jury was selected. (RR3: 9-142). On April 8, 2014, the jury was sworn, Appellant entered a plea of not guilty, and the jury trial commenced. (RR4: 16-17, et seq.). The only issue at trial was *why* the complainant's death occurred—Appellant freely admitted to killing him. (RR4: 207; RR5: 142; RR6: 41). To that end, Appellant explained that the complainant had become enraged and raped her when her drug dealer had sold them baking soda claimed to be cocaine. (RR6: 30-32, 35-37). She testified that when she then threw the condom he had used in his face, the complainant attacked her, and that she stabbed him purely in self- defense. (RR6: 37-41). As to any "overkill" that followed, Appellant testified that she had blacked out during the attack and did not remember anything that followed. (RR6: 41-42).

In support of Appellant's testimony, the security guard reported that approximately 30 minutes before finding Appellant in the hallway he had heard loud fighting and "banging against the walls of the motel room to the extent that the door of the motel room [was] visibly shaking." (RR5: 146-47). Additionally, multiple police officers and medical professionals testified that Appellant was dazed and unresponsive. (RR4: 105,

8

108-09, 214, 223, 230; RR5: 9-10, 48-49). After hearing evidence and testimony, though, on April 14, 2014, the jury found Appellant guilty of murder as charged in the indictment. (CR: 825; RR7: 113).

On that date, the punishment hearing before the jury commenced, and Appellant pleaded true to each of the two prior felony convictions alleged for enhancement. (RR7: 115-16, et seq.). On April 15, 2014, after hearing testimony and evidence, the jury found the allegations in the enhancement paragraphs of the indictment to be true and assessed punishment at confinement for life. (CR: 841; RR8: 63). Appellant was sentenced on that date. (CR: 833; RR8: 64-65).

Appellant timely filed a motion for new trial and written notice of appeal, the former of which was overruled by operation of law. (CR: 828). Before the Fifth Court of Appeals, Appellant argued that: (1) the evidence was insufficient to support her conviction and to disprove her claim of self-defense; (2) the trial court erred in conducting an in camera hearing in her absence; and (3) her sentence was void because it was enhanced using the same prior aggravated assault conviction twice. *Richardson v. State*, No. 05-14-00523-CR, 2015 WL 4749181, *1 (Tex. App.—Dallas 2015). In a cross-point, the State asked the court to modify the judgment

9

to show that Appellant pled true to both enhancement paragraphs, both of which the jury found were true. *Id.* In an opinion filed August 11, 2015, the court concluded that: (1) the evidence was sufficient to support Richardson's conviction over her claim of self-defense; (2) Richardson was not harmed by the discussion of legal issues in her absence because it did not substantially impair her defense or otherwise cause her harm; and (3) the sentence was not void because the same enhancement was not used twice in this proceeding. *Id.* The court modified the judgment to show that Appellant pled true to both enhancement paragraphs and that the jury found that the enhancement paragraphs were true. *Id.* As modified, the court affirmed the trial court's judgment. *Id.* Appellant did not file a motion for rehearing.

## Argument

> The State in this case enhanced the indictment with previous felony convictions for driving while intoxicated and aggravated assault. But the DWI was only punishable as a felony because it, too, was enhanced by the aggravated assault. The State thus impermissibly used the same prior conviction more than once in the same prosecution.

❖ ❖ ❖

## I.   The indictment, the enhancements, and the objection

The murder indictment in this case included two enhancement paragraphs: the first alleging a driving while intoxicated with a child passenger conviction, and the second alleging an aggravated assault conviction. (CR: 8; SX150 & SX151). Since the former was only punishable as a third-degree felony because it, too, was enhanced by the aggravated assault conviction, during the punishment charge conference defense counsel objected to the same prior aggravated assault conviction being used in both enhancements. (RR8: 33-34); (CR: 8); *see* TEX. PEN. CODE § 12.35(c)(2)(B), 12.42(d). Defense counsel urged that the same essential element should not be part of both enhancements and that the State should have to make a choice as to which enhancement would use the aggravated assault conviction. (RR8: 34).

11

The prosecutor responded that the State is "allowed to use prior offenses for enhancement purposes repeatedly.... And that right stems from Section 12.46 of the Texas Penal Code and [sic] which states that the use of a conviction for enhancement purposes shall not preclude subsequent use of such conviction for enhancement purposes." (RR8: 35). The trial court questioned whether this right included using the same prior conviction twice in the same indictment—once to enhance the charged offense, and once to enhance the other enhancement offense—but because neither party could provide specific authority, the trial court ultimately overruled defense counsel's objection. (RR8: 35-38).

## II.    The court of appeals's holding

On appeal to Dallas's Fifth Court of Appeals, Appellant argued in her final ground of error that the State improperly used her prior aggravated assault conviction in both enhancements in order to punish her as a habitual offender under Section 12.42(d) of the Texas Penal Code. (App. Br. at 47-51). Section 12.46 of the Texas Penal Code, cited by the State at trial, does not apply in this case. That section provides only that "[t]he use of a conviction for enhancement purposes shall not preclude the subsequent use of such conviction for enhancement purposes." TEX. PEN.

CODE § 12.46 (emphasis added). It does not allow for the same conviction to be used twice in indicting the same offense.

As to that issue, Appellant pointed to *Hernandez v. State*, 929 S.W.2d 11, 13 (Tex. Crim. App. 1996), in which this Court held that the same conviction for robbery with a deadly weapon could not be used to enhance the indicted state-jail felony offense to an aggravated state-jail felony offense and also as an enhancement to that aggravated state-jail felony offense under Section 12.42(d). This Court succinctly explained that "[t]he State is not permitted to use the same prior conviction more than once in the same prosecution." *Id.* Likewise, in *McWilliams v. State*, 782 S.W.2d 871, 874-75 (Tex. Crim. App. 1990), this Court held that the State was precluded from using a prior conviction to enhance the punishment when that same prior conviction had been used to create the charged offense of escape from a penal institution. And in *Ramirez v. State*, 527 S.W.2d 542, 544 (Tex. Crim. App. 1975), this Court held that the punishment could not be enhanced by the same prior conviction used to create the charged offense of unlawful possession of a firearm by a felon. *See also Wisdom v. State*, 708 S.W.2d 840, 845 (Tex. Crim. App. 1986).

Similarly, in the present case, where the same conviction was used in the two enhancements in the same indictment so that Appellant could be punished as a habitual offender, the premise is virtually identical. Because in this circumstance, too, the State should not be permitted to use the same prior conviction twice in the same prosecution, Appellant urged the court of appeals that the trial court erred. (Ap. Br. at 50-51) (citing *Hernandez*, 929 S.W.2d at 13; *McWilliams*, 782 S.W.2d at 874-75; *Ramirez*, 527 S.W.2d at 544).

The court of appeals was unmoved. Though the DWI was only available to use for enhancement purposes because of the aggravated assault conviction, the court rejected Appellant's argument because her sentence here was ostensibly enhanced by two different convictions. *Richardson v. State*, No. 05-14-00523-CR, 2015 WL 4749181, *10 (Tex. App.—Dallas 2015). It determined it "of no consequence" that "the DWI was previously enhanced by the aggravated assault in another proceeding." *Id.*

## III. A distinction without difference is no distinction at all

In *Ballard v. State,* the Austin Court of Appeals considered whether a sexual assault conviction that gave rise to the duty to register as a sex

offender could also be used to enhance the punishment for failing to register without running afoul of the prohibition against using the same conviction twice in the same prosecution. 149 S.W.3d 693, 696 (Tex. App.—Austin 2004, pet. ref'd); *see Hernandez*, 929 S.W.2d at 13. In arguing that it could, the State contended "It is the status of being required to register as a sex offender, and not the underlying crime which creates the status, which is an element of the offense of failing to comply with sex offender registration.... Since appellant's reportable conviction was not an essential element of the offense ..., it could be used to enhance the punishment range for that offense...." *Id.* at 698.

The court of appeals swiftly rejected "the State's proposed distinction between appellant's status as a person required to register as a sex offender and appellant's previous conviction for a reportable offense" as "a distinction without a difference":

> By definition, a person who must register is a person with a reportable conviction. Similarly, a convicted felon is a person with a felony conviction. In both instances, it is the previous conviction that gives the person the significant status. To prove that a person is required to register (has the status of being required to register) is to prove that the person has a reportable conviction, just as to prove that a person is a convicted felon (has the status of convicted felon) is to prove that he has a previous felony conviction.

*Id.* Accordingly, the court held that Ballard's conviction for a reportable offense could not be used to enhance his punishment. *Id.* at 699.

The court of appeals's conclusion in Appellant's case stands in stark contrast. Just as Ballard was only required to register because of his previous conviction, Appellant's DWI conviction was only a felony because it was enhanced by her aggravated assault conviction. But because the words "aggravated assault" were not literally printed on the indictment twice, the court determined it "of no consequence" that "the DWI was previously enhanced by the aggravated assault in another proceeding." *Richardson*, 2015 WL 4749181 at *10.

Appellant urges this Court that, just as the distinction in *Ballard* was one without difference, so, too, is the one in her case. Her previous aggravated assault conviction both enhanced the indictment in this case and allowed her previous DWI conviction to enhance the indictment. *See* TEX. PEN. CODE §§ 12.35(c)(2)(B), 12.42(d). That it was not twice printed on the indictment is no matter—it impermissibly pulled double duty. *See Hernandez*, 929 S.W.2d at 13 ("The State is not permitted to use the same prior conviction more than once in the same prosecution."). The court of

16

appeals's conclusion otherwise was thus erroneous. Accordingly, Appellant respectfully requests this court to grant this petition so that it may reverse the judgment of the court of appeals and remand this case to that court to consider whether the error rendered Appellant's sentence void or, alternatively, was harmful.

## **Prayer**

For the foregoing reasons, Appellant respectfully requests this Court grant this petition for discretionary review.

Respectfully submitted,

_____/s/ Bruce Anton_____
BRUCE ANTON
Bar Card No. 01274700
ba@sualaw.com

_____/s/ Brett Ordiway_____
BRETT ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201
(214)-468-8100 (office)
(214)-468-8104 (fax)

*Counsel for Appellant*

17

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's Office and State Prosecuting Attorney on October 8, 2015.

_/s/ Bruce Anton_
Bruce Anton

## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this brief contains 2,177 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century.

_/s/ Bruce Anton_
BRUCE ANTON

# APPENDIX



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00523-CR

## CRISTAL PAULLETT RICHARDSON, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-1300479-X**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

The parties do not dispute that Cristal Richardson stabbed Cedrick Owens over 130 times and amputated his external genitalia after an all-night party in her motel room involving PCP, cocaine, marijuana, and other drugs. The next afternoon, a motel security guard saw Richardson run out of her room naked, dazed, and covered in blood. Despite the absence of defensive wounds on Owens, Richardson claimed she acted in self-defense and testified at trial.

Despite Richardson's testimony, the jury convicted her of murder. She pled true to two prior felony convictions alleged for enhancement. The jury found that the enhancement allegations were true, and sentenced her to life imprisonment.

In three appellate issues, Richardson asserts that (i) the evidence is insufficient to support her conviction and to disprove her claim of self-defense, (ii) the trial court erred in conducting an

in camera hearing in her absence, and (iii) her sentence is void because it was enhanced using the same prior aggravated assault conviction twice.

In a cross-point, the State asks us to modify the judgment to show that Richardson pled true to both enhancement paragraphs, both of which the jury found were true.

We conclude that (i) the evidence is sufficient to support Richardson's conviction over her claim of self-defense, (ii) Richardson was not harmed by the discussion of legal issues in her absence because it did not substantially impair her defense or otherwise cause her harm, and (iii) the sentence is not void because the same enhancement was not used twice in this proceeding. Accordingly, we modify the judgment to show that Richardson pled true to both enhancement paragraphs and that the jury found that the enhancement paragraphs were true. As modified, we affirm the trial court's judgment.

## I.  BACKGROUND

On the evening of April 27, 2012, Owens and his friends Deidre Lyons, Robin Summerfield, and "Killer Bee" were driving around, drinking and doing drugs. They met Richardson for the first time at a convenience store in South Dallas.

Richardson said it was her birthday, and invited the group to continue the party in her motel room. Between 1:00 a.m. and 2:00 a.m., Owens and his friends accompanied Richardson to her room where the group spent the evening talking, drinking, and using marijuana, cocaine, and PCP. Four or five times during the night, Lyons, Richardson, and Owens stepped out to get more drugs. At some point, they all took Summerfield and Killer Bee home. Lyons, Richardson, and Owens returned to the motel, and Lyons left at 4:00 or 5:00 a.m.

Sometime after 4:00 p.m. the following day, a motel security guard walked past Richardson's room on his way to the vending machine and heard two people "arguing or

fighting." He heard "little smacks," that were "no louder than hand claps," and then heard a male voice say, "You got me." A female voice responded, "You got me too."[1]

About thirty minutes later, as the security guard was on his way to get more snacks, he saw Richardson emerge from her room "buck naked," and covered in blood from head to toe. When the guard asked Richardson if she was all right, she looked up, stretched her arms out, and "let out . . . a shriek or a shrill." He got Richardson a towel and told the front desk to call the police.

Dallas Police Officer Ryan Willis and his partner responded to the call and found Richardson in a stairwell, wrapped in a blanket, with some minor lacerations. When Willis asked what happened, Richardson was non-responsive.

The security guard opened the door to Richardson's room, and Willis saw "a pile of money that was covered in blood on the floor." Owens was "slumped over on the floor . . . cut up pretty bad." Willis secured the crime scene and contacted his superior.

That Richardson killed Owens was never disputed. Richardson, however, testified in her defense, and in summary, said that she stabbed Owens after he attacked and raped her. The State, on the other hand, presented evidence that Richardson killed Owens in a violent, bloody attack involving genital mutilation and over 130 stab wounds all over his body that were consistent with her attacking him in a fit of rage while he was defenseless. The State also points to numerous inconsistencies in her testimony, with her prior statements and the physical evidence. A jury convicted her of murder despite her claim that she acted in self-defense.

---

[1] On cross-examination, defense counsel questioned the guard's recollection and asked about a detective's report stating the guard heard loud fighting and "banging against the walls to the extent that the door of the motel room [was] visibly shaking." (5 RR 146-47, SX 158, 4 RR 98-100).

## II. ANALYSIS

**A.** **Richardson's First Issue: Was the evidence sufficient to support Richardson's conviction over her self-defense claim?**

**1. Standard of Review and Applicable Standards.**

Richardson's first issue argues that the evidence shows that Owens sexually assaulted, attacked, and stabbed her, so she stabbed him repeatedly to protect herself. According to Richardson, no rational fact-finder could have found against her on her claim of self-defense.

Under the penal code, an individual is guilty of the crime of murder if she "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). However, the code also states that an individual "is justified in using deadly force against another . . . if the actor would be justified in using force against the other under Section 9.31 [addressing self-defense]" and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id*. § 9.32(a).[2] "Deadly force" means "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id*. § 9.01(3).

Self-defense is a fact issue for the jury to determine, and if the jury enters a guilty verdict, it implicitly rejected the self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). For self-defense claims, the defendant has the burden of producing some evidence to support the claim. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). If the defendant produces some evidence, the State has "the burden of persuasion to disprove the raised defense." *Id*. But this does not require the production of any additional evidence; instead, "it requires only that the State prove its case beyond a reasonable doubt." *Id*.

---

[2] Section 9.31 (Self-Defense) provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *See* TEX. PENAL CODE ANN. § 9.31 (West 2011).

–4–

Therefore, in reviewing a sufficiency challenge regarding a self-defense claim, we do not look to whether the State presented evidence that refuted self-defense. Rather, we determine, after viewing all the evidence in the light most favorable to the verdict, whether any rational trier of fact (1) would have found the essential elements of the offense beyond a reasonable doubt, and (2) would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Our duty is to ensure that the evidence presented supports the jury's verdict and the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

**2. Richardson's Arguments.**

In support of her argument that the evidence is insufficient to support her conviction, Richardson disputes the inferences to be drawn from the State's evidence, and relies on (i) the medical examiner's testimony that the wounds could have been inflicted in a few minutes or less and were likely not inflicted in a calm fashion, (ii) her statement to the news reporter that she attacked Owens because he attacked her first, (iii) the detective's report which says that the guard heard loud fighting in her motel room, and (iv) the fact that she was the "major contributor" of DNA on the knife handle.

She also relies on her own testimony and asserts that "the State presented no evidence that contradicted or disproved" her account of events. We disagree. The jury was not required to believe Richardson, even if her testimony was uncontroverted. *See Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987). Instead, the jury is to determine the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)

Despite the absence of direct evidence to contradict Richardson's version of events, there was evidence that could reasonably cast doubt on her testimony. Indeed, the jury could

reasonably find that Richardson was not credible or that her self-defense claim was inconsistent with the other evidence.

### a.     The State's Evidence.

Given Richardson's self-defense arguments, we discuss in detail the testimony and physical evidence bearing on the credibility of her testimony and who was the aggressor in this case.

The State presented evidence of the following facts:

Richardson was taken to Parkland Hospital after the police found her in the stairwell. The hospital records show that she denied using drugs or alcohol, but would not tell the staff what happened. She told the staff that her boyfriend bought her a night at a motel for her birthday. She had room service breakfast and lunch the next day, and did not remember anything after that.

Officer Dameon Sansom was charged with making sure Richardson did not leave the hospital. Sansom reported that Richardson was incoherent, did not respond to questions from medical staff, and appeared to be either drunk or high. He took her for a sexual assault exam, and Richardson asked why she was there. When she was told she was being charged with murder, she asked "for who?" and started yelling incoherently.

Homicide detective Brian Tabor saw Richardson in the hospital. In the fifteen to twenty minutes he spent with her, she was unresponsive, very high on drugs, and had a lot of dried blood on her body. She did not acknowledge anything going on around her, and was busy picking what Tabor believed was pubic hair out of the dried blood on her hands.

Medical records show that Richardson had cocaine, opiates, cannabinoid, phencyclidine (PCP), and "benzodiaphragm" [sic] in her system.

During the sexual assault exam, Richardson told the doctor she did not remember anything after she showered and ate that morning until the officers found her naked in the stairwell. Also during the exam, Richardson said that she had sexual intercourse on April 27 at 10:00 p.m. The doctor's report indicated Richardson's assailant was unknown. Richardson was not sure if a penis or other object penetrated her vagina, but she felt like she was violated in the vaginal area. Richardson did not know if her assailant wore a condom. Richardson had some small cuts and scratches and reported that her assailant had been stabbed and had cuts.

Another Dallas police officer collected DNA evidence and took photographs. Richardson had cuts on her fingers and there appeared to be pubic hair by her hand. There was also a cut on the back of her right thigh and a cut on her forearm.

Detective David Andree processed the crime scene. When he opened the door to the room, he saw a large amount of money with blood on it, and the room was in disarray. There was clothing lying around, a used condom, food scattered around, and a couple of baggies with a white substance in them. There was blood on most of the walls.

Owens was on the floor, just past the bathroom. He had several stab wounds, and his penis, testicles, and part of his neck had been removed from his body.

Some of the evidence Andree collected included: (i) $1,961.51 cash, (ii) two cell phones, (iii) Owens's ID card, (iv) a white muscle shirt with cuts throughout the shirt in the front and back, (v) a pair of capri pants with a hole in the back leg, (vi) a pink tank top with what appeared to be blood on it, (vii) a condom wrapper and (viii) a "black-handled, straight-bladed folding knife with a three inch blade with a belt clip."

Andree believed that the blood smears on the wall were consistent with some type of struggle, and the "spatter" on the wall could have been consistent with somebody using a knife "over 130 times up and down stabbing."

Owens had no defensive wounds to his hands. Andree explained that defensive wounds occur when someone is coming at you with a knife and you put your hands up trying to make him stop. When someone has no defensive wounds, it is possible that he was passed out or did not see the attack coming, or that one of the strikes incapacitated the person from the beginning. Andree opined that it is not possible to keep your hands by your side while knowingly being stabbed.

Andree also said that the crime scene had been altered. Owens's shirt had multiple "defects" in it, but had been taken off of his body and was on the other side of the room. Someone had removed Owens's pants. As evidenced by the blood pooling patterns on the floor, Owens's body had also been moved.

Andree explained several photographs of the crime scene, including a photograph of Owens with his testicles behind him, a picture of Owens's hands, which showed no defensive wounds, a close-up of the stab wounds on Owens's neck, and a castrated penis in a purple flip-flop.

The medical examiner who performed the autopsy on Owens said that Owens had several substances in his body—cocaine and metabolites of cocaine, marijuana, phencyclidine (PCP), and hydrocodone. The body was very bloody and had approximately 130 stab and incised wounds on almost every surface. These wounds included numerous "significant deep" incised neck wounds, and the medical examiner explained that, unlike stab wounds, incised wounds are cuts that are usually longer rather than deeper. These were sharp force injuries made by a sharp implement like a knife. The wounds went through the skin, the muscles, and the soft tissue of the throat, the larynx, the trachea, and several large vessels on the right side of the neck. These wounds would have killed Owens.

The medical examiner described a cluster of thirty-three stab and incised wounds that went from the back side of the head to the upper back that were all lined up and "very parallel in nature." She also gave a detailed description of numerous other stab wounds to the neck and face area, chest, abdomen, trunk, back, legs, arm shoulder, buttocks, and thighs. Two of these wounds could have been fatal. There were also numerous superficial incise wounds that were consistent with a knife going across a body part.

Owens's external male genitalia had been amputated, including the penile shaft, the scrotal sac, both testicles, and some of the soft tissues and vasculature that leads back up into the body cavity. The medical examiner explained that because the scrotal skin is tough, it would not be easy to amputate and would require some effort and a multitude of cuts. The person who cut through this tough tissue could likely have cuts on his/her own hands. The medical examiner said that while there is no way to be certain that the castration occurred before death, it is unlikely to happen unless the victim is completely unconscious.

Owens died from multiple sharp force injuries, and had several stab wounds that would have been lethal. The knife that was recovered from the scene and introduced into evidence is a deadly weapon and the type of sharp object that could have caused all of Owens's injuries.

According to the medical examiner, sexual mutilation typically occurs in intimate relationships and "sometimes in an assaultive type relationship." Owens's wounds could have been inflicted in a just a few minutes or even less, "depending upon the speed in which [the assailant] is doing it and rage in which [the assailant] is acting."

A forensic biologist performed a DNA analysis on the condom and the knife. Richardson's DNA profile matched one of two stains on the condom. Another stain showed a DNA mixture from at least two individuals—Owens, and a trace amount from Richardson. The sperm cells matched Owens's DNA profile.

There was "handler DNA" on the knife, which is DNA left by touching the handle of an item. This sample had a partial DNA profile that matched Richardson's profile. A blood stain on the tip of the knife had a low level of DNA that was a mixture of two individuals. The DNA for the major contributor matched Richardson's, and the DNA for the minor contributor matched Owens's. A final sample from the back end of the handle on the knife matched Richardson's profile.

Detective Tommy Raley interviewed Richardson after her arrest. Initially, Richardson would not talk to him, but she later said that Owens tried to kill her. When Richardson said, in effect, that someone told her about the crime she committed, Raley talked to other officers involved in the case and learned that the officer who took Richardson to jail told her what she had done. Richardson did not tell Raley anything about buying bad drugs and angering Owens, rape, or physical assault.

Raley also learned that Richardson had three prior claims of sexual assault, but Richardson did not check on the cases, give any further statements, or follow through after her initial reports. In one case, she did not return an officer's phone call to follow-up on her complaint.

**b.     Richardson's Testimony.**

Richardson provided the following testimony:

Richardson admitted that she uses drugs frequently, and that she "spent all night getting high" the night Owens was killed. Before meeting Owens and his friends, she had taken half of a Xanax pill and smoked PCP with a friend in her motel room.

Owens's friend Lyons approached her about partying. She decided it would be safe because there were two women, so she invited Owens and his friends to her motel room to get high. They smoked PCP, did powder cocaine, smoked marijuana, and consumed alcohol. They

did not realize it was morning until the cleaning people knocked on the door. She continued using drugs until about 10:00 a.m.

Eventually, she was alone with Owens. They were both high, but were just "talking and chilling." Owens said he wanted some more cocaine, so Richardson called an acquaintance. The substance delivered by the acquaintance, however, was baking powder, not cocaine, and Owens became angry. Owens told Richardson, "I'm fixin to go." He was standing at the window like he was getting ready to leave, and then he turned around and raped her.

Owens grabbed her neck and they struggled a bit, but there was nothing she could do. She claimed Owens "had to have" ripped her clothes off, and was holding her down while doing so. Owens did not take his pants off, and when he finished, she still had her shirt on. Richardson did not see Owens put a condom on. But when he finished raping her, he took a condom off, threw it on the floor and said, "You stupid ass bitch, that's for my money loss." Richardson put her pants back on and grabbed the condom and threw it in Owens's face. Owens responded by punching her in the face. Richardson said that her nose started bleeding, but admitted she was not treated for this injury at the hospital.

Richardson tried to run out of the room, but Owens pushed the door closed, put the chain on, and "started beating [her] real bad." Owens beat her "in the head," and she tried to ball up to protect herself. Owens began kicking her back, and kicked her in the vagina.

At some point, Owens stopped and was "cussing her out." Richardson jumped up, ran to the other side of the room, and grabbed the knife Owens had used to snort cocaine. Owens grabbed her by the hair, took the knife away, said he would kill her, and beat her some more. She tried to run for the door, but felt something hurt her leg. She later found out this was a deep cut. The pair kept fighting and Richardson thought Owens was going to beat her to death. She felt like her life was in danger so she gained control of the knife and stabbed Owens. Richardson

–11–

did not know how many times she stabbed Owens, but every time he came towards her, she would stab him.

Richardson did not remember any of the "overkill," nor did she remember how she ended up naked in the hall. She said she was sorry about what happened, but she was scared for her life, and felt like "a rat in a room full of snakes."

When an officer told Richardson that she "cut that man's junk off," Richardson told her, "Bitch, you don't know what he did to me." Richardson said she did not recall speaking to the detective because she had blacked out. But she did not know when she blacked out. Although she remembered Owens beating her, she did not tell the doctors about it because she was in shock. She also claimed she was no longer high by the time the struggle with Owens occurred.

After she was arrested, Richardson spoke with a news reporter, and her videotaped interview was played for the jury. When she testified at trial, Richardson did not recall telling the reporter that Owens said, "Please don't kill me." She also told the reporter that she attacked Owens because he attacked her. She did not remember telling a friend that she had "probably" been raped.

Although Richardson claimed that a friend got the motel room for her as a birthday present, the State introduced evidence that Richardson booked and paid for her room.

Richardson admitted that she had been previously convicted of DWI, misdemeanor theft, credit card abuse, and aggravated assault with a deadly weapon. The aggravated assault case involved her stabbing someone. By stipulation, the jury was also informed of Richardson's convictions for burglary of a building and drug possession.

c.      **Analysis of the Evidence.**

There was ample conflicting evidence, and a jury could reasonably disbelieve Richardson's version of what happened. For example, Richardson stabbed Owens with a

knife—over 130 times. He was stabbed all over his body, and several of the wounds could have been fatal. Richardson admitted to stabbing Owens, she just could not recall the number of times she stabbed him. Furthermore, one of Richardson's prior convictions involved stabbing someone with a knife. From this evidence, the jury could have concluded that Richardson had the knowledge and ability to use a knife to great effect.

Richardson, Owens, and their companions had consumed a variety of illegal drugs throughout the night, and when she was taken to the hospital the following evening, Richardson still appeared to be high. Hospital records confirmed that illegal substances were present in Richardson's blood. The jury could have believed that the drugs adversely affected her behavior, her ability to recall events, and her credibility.

Richardson gave varying accounts of the events at different times. She claimed that she did not recall what happened until an officer told her what she had done. She told a reporter that she stabbed Owens because he attacked her first, but did not remember him pleading for his life. She did not tell the motel security guard, the police, or hospital personnel that she had been raped and beaten, but recalled these events in very specific detail later.

The evidence showed that Richardson claimed to have been sexually assaulted on three prior occasions, but did nothing to follow up after lodging her initial complaint. The jury could have concluded from this evidence that her sexual assault claims lack credibility.

Richardson claimed she did not remember removing Owens's genitalia. There was evidence, however, that Owens's shirt was removed after he was stabbed and his body had been moved, suggesting that Richardson may have been sufficiently aware of her actions to alter the crime scene. Moreover, the evidence showed that this type of mutilation would have been difficult to do even had Owens been incapacitated when it happened. The jury could have reasonably seen this evidence as being contrary to self-defense.

–13–

Despite the number of wounds and the degree of mutilation of his body, Owens had no wounds indicating that he tried to defend himself. The DNA on the handle of the knife matched Richardson's DNA profile. From this evidence, the jury could rationally conclude that Richardson was the aggressor and had incapacitated Owens so that he was unable to fend off her attack.

The cuts on Richardson's hands were consistent with the stabbing and the mutilation of Owens's body. And even if the jury believed that Richardson had been attacked, they could rationally have concluded that the number of stab wounds and the mutilation of the body exceeded any deadly force that may have been reasonably necessary under the circumstances.

On this record, we conclude that a rational trier of fact could have found Richardson guilty of murder beyond a reasonable doubt by choosing to believe the evidence favoring that she intentionally or knowingly caused Owens death, and by choosing to disbelieve the evidence favoring that she was justified in using force against Owens to the degree she reasonably believed immediately necessary to protect himself against Owens's use or attempted use of unlawful force. *See Smith v. State*, 352 S.W.3d 55, 63 (Tex. App.—Fort Worth 2011, no pet.) (jury's prerogative to resolve conflicting evidence in favor of assault conviction and not in favor of self-defense); *see also Denman v. State*, 193 S.W.3d 129, 132 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Because the jury, by finding appellant guilty, implicitly rejected his self-defense theory, it necessarily chose not to believe the testimony concerning such.").

Accordingly, we overrule Richardson's first issue.

**B.      Richardson's Second Issue:  Was it reversible error to conduct an in camera hearing in Richardson's absence?**

**1.      The Issue.**

Richardson's second issue argues that the trial court erred in conducting a Rule 403 hearing in chambers without her present in violation of article 33.03 of the code of criminal

procedure and the Sixth Amendment's Confrontation Clause. *See* TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006); U.S. CONST. amend. VI. Although she acknowledges that defense counsel did not object to her absence from the hearing, she insists that the trial judge had an independent duty to implement her rights. We reject her arguments because even if the trial court erred, Richardson was not harmed. The hearing had no reasonable relationship to Richardson's opportunity to defend and any error was harmless beyond a reasonable doubt.

**2.      The Hearing.**

The State wanted to admit evidence of Richardson's extraneous acts while in jail and a telephone call she made from jail. The State also wanted to elicit evidence that Richardson was the aggressor in her prior aggravated assault case. The trial judge granted a motion in limine and said she would conduct a hearing when the time came.

During Richardson's direct examination, the jury was given a break and the parties continued the discussion about extraneous offenses on the record and in the courtroom. The trial judge said she wanted to have a Rule 403 hearing outside the presence of the jury to listen to Richardson's jail call and hear any other evidence "on the issue of first aggressor."

The attorneys and the trial judge then moved to the judge's chambers, and the court conducted the hearing without Richardson present. When counsel and the judge returned to the courtroom, the judge said:

> I am ready to make my ruling. I want the record to reflect for about the last hour I have met with the attorneys in chambers. We have had a 403 hearing that is not on the record, but it was done in chambers at their request, and discussed several issues. And I am going to rule, number one, with regards to the prior conviction, the ag assault deadly weapon from 2004, that you can ask her if that was an ag assault deadly weapon . . . Based on rule 403 analysis I am not going to allow the phone call from the jail. I find that more prejudicial than probative, and I am not going to allow any questioning about the other two incidents that we discussed from the jail.

–15–

### 3. Standard of Review and Applicable Standards.

The code of criminal procedure states that a defendant must be personally present at the trial, with the exception of when the defendant voluntarily absents himself from trial after pleading to the indictment or the jury has been selected. *See* TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006). The Fourteenth Amendment of the Constitution also requires the defendant's presence at proceedings against him "to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." *Adanandus v. State*, 866 S.W.2d 210, 219 (Tex. Crim. App. 1993) (quoting *Snyder v. Massachusetts*, 291 U.S. 97 (1934)). Where the presence of a defendant does not bear a "reasonably substantial relationship to the opportunity to defend," no harm results from his absence from the proceedings against him. *Id.* To assess harm, we must address whether the hearing bore a substantial relationship to Richardson's opportunity to defend herself in addition to harm under the rules of appellate procedure. *See Adanandus*, 806 S.W.2d at 220; TEX. R. APP. P. 44.2 (a).

### 4. Application to this Case.

Here, even if the trial court erred in conducting the hearing in Richardson's absence, she was not harmed. The hearing involved the admission of evidence, which is a question of law. *See Adams v. State*, No. 13-09-00334-CR, 2010 WL 2783745, at *14 (Tex. App.—Corpus Christi July 15, 2010, pet. ref'd) (not designated for publication) (discussing conference on the charge and the admission of evidence as legal issues for which defendant's presence was not required). As the Texas Court of Criminal Appeals has observed, "It is difficult to imagine a trial fraught with complex legal problems when there will not be occasions where counsel and the court will confer on questions of law at the bench or in chambers outside the presence of the defendant." *Mares v. State*, 571 S.W.2d 303, 307 (Tex. Crim. App. [Panel op.] 1978).

–16–

Richardson was represented by counsel, and there was no evidence that she had relevant information not available to the trial court or the attorneys on the matters addressed. Even had Richardson been present, the legal issues for the trial court to decide would not have changed. Therefore, we cannot conclude that the hearing bore a reasonably substantial relationship to Richardson's opportunity to defend.

Similarly, the record does not show that Richardson was harmed under the applicable rule of appellate procedure. *See* TEX. R. APP. P. 44.2(a). Her absence from the hearing on legal issues could not have contributed to her conviction. There is no indication that her presence at the hearing would have changed any of the legal arguments or furthered her defense at trial. Because there is no evidence that harm occurred, any error that may have occurred does not constitute reversible error. *See Routier v. State*, 112 S.W.3d 554, 577 (Tex. Crim. App. 2003).

For these reasons, we overrule Richardson's second issue.

**C.    Richardson's Third Issue:  Was Richardson's 2004 aggravated assault conviction improperly used to enhance her conviction in this case?**

Richardson's third issue argues that because her 2004 aggravated assault conviction was used to enhance her 2010 DWI conviction, that aggravated assault conviction could not be used to enhance this conviction for murder, and therefore the sentence is void because it is outside the range of punishment.

The first enhancement paragraph in the murder indictment alleges that Richardson:

> . . . was finally convicted of the felony offense of DRIVING WHILE INTOXICATED WITH A CHILD, in the 283RD JUDICIAL DISTRICT COURT of DALLAS County, Texas, in Cause Number F-0932205, on the 10TH day of NOVEMBER, 2010.

The second enhancement paragraph in the murder indictment alleges that prior to the commission of the offense described in the first enhancement paragraph, Richardson:

> . . . was finally convicted of the felony offense of AGGRAVATED ASSAULT WITH A DEADLY WEAPON, in the CRIMINAL DISTRICT COURT NO. 1 of

DALLAS County, Texas, in Cause Number F-0452255, on the 23RD day of SEPTEMBER, 2004.[3]

Richardson cites several cases in support of her argument that the prior aggravated assault conviction cannot be used to enhance her punishment for murder because "the same conviction was used in two enhancements in the same indictment." *See McWilliams v. State*, 782 S.W.2d 871, 875 (Tex. Crim. App. 1990); *Wisdom v. State*, 708 S.W.2d 840, 845 (Tex. Crim. App. 1986); *Ramirez v. State*, 527 S.W.2d 542, 543–44 (Tex. Crim. App. 1975). These cases, however, generally hold that a prior conviction cannot be used as an element of an offense and also to enhance punishment for that same offense. They do not address the situation here where a prior aggravated assault conviction and a prior DWI conviction were used to enhance punishment.

Similarly, Richardson's reliance on *Hernandez v. State*, 929 S.W.2d 11, 13 (Tex. Crim. App. 1996) is also misplaced. In that case, the State used a prior robbery conviction to enhance the charged state jail felony to a third degree felony, and in the same prosecution, also used the prior robbery conviction to enhance to a third degree felony under the habitual offender section of the penal code. *Id*. at 12–13. The Texas Court of Criminal Appeals reversed, citing *McWilliams*, *Ramirez*, and *Wisdom*, and held the sentence was improperly enhanced because the State cannot use the same prior conviction more than once in the same prosecution. *Id*. at 13.

Section 12.46 of the penal code, however, provides that the use of a prior conviction to enhance a sentence does not preclude the subsequent use of the same prior conviction to enhance a different sentence. *See* TEX. PENAL CODE ANN. § 12.46 (West 2011); *Hall v. State*, Nos. 05-03-00949-CR, 05-03-00950-CR, 2005 WL 1231661, at *1 (Tex. App.—Dallas May 25, 2005, no pet.) (not designated for publication). The sentence here was enhanced by the prior aggravated

---

[3] The indictment in the DWI case alleged, "prior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of AGGRAVATED ASSAULT WITH A DEADLY WEAPON, in the CRIMINAL DISTRICT COURT NO. l of DALLAS County, Texas, in Cause Number F04-522-55, on the 23RD day of SEPTEMBER, 2004."

assault conviction and the prior DWI. That the DWI was previously enhanced by the aggravated assault in another proceeding is of no consequence. Richardson's murder sentence was not improperly enhanced and is therefore not void.

Accordingly, we resolve Richardson's third issue against her.

**D.    The State's Cross-Point: Should the judgment be modified?**

The State asks that we modify the judgment to show that Richardson pled true to both enhancement paragraphs and that the jury found the enhancement paragraphs were true. An appellate court can modify incorrect judgments when the evidence necessary to correct a judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, writ ref'd).

Here, we have the necessary evidence to correct the judgment. Although the judgment says "N/A" in the space provided for Richardson's pleas to the enhancement paragraphs and also in the space for the findings on the enhancement paragraphs, Richardson admitted to these prior convictions when she testified. Richardson also pled true to both enhancement allegations at the punishment stage. The jury found that each of the enhancement allegations were true.

Therefore, we modify the judgment to reflect that Richardson pled true to both enhancement paragraphs and the jury found each of these paragraphs were true. As modified, we affirm the trial court's judgment.


/Bill Whitehill/

Do Not Publish                BILL WHITEHILL
TEX. R. APP. P. 47            JUSTICE
140523F.U05


–19–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CRISTAL PAULLETT RICHARDSON,
Appellant

No. 05-14-00523-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F-1300479-X.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers
participating.

Based on the Court's opinion of this date, we modify the judgment to show that Richardson pled true to the two enhancement paragraphs and the jury found the enhancement paragraphs true. As **Modified**, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 11, 2015.