**Affirmed and Memorandum Opinion filed October 26, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00226-CR

**VICTOR OMOLEME, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1581723**

## MEMORANDUM OPINION

Appellant appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Penal Code § 22.02(a)(2). In a single issue, appellant asserts he suffered egregious harm when the jury was not instructed on the use of non-deadly force to protect oneself. We affirm.

### BACKGROUND

The complainant and appellant are rideshare drivers working for Uber. While

waiting in the airport rideshare parking lot for fares appellant backed into the complainant's car and damaged the front bumper. The complainant obtained appellant's name, contact information, and insurance information. Appellant's insurance company informed the complainant that the policy number was incorrect. The complainant texted appellant after appellant refused to return the complainant's phone calls. The complainant told appellant that the insurance policy number was "fake," and that the complainant planned to report the accident to Uber and Lyft. Appellant responded via text that he had not given false information and that he preferred that the complainant talk directly with him, not his insurance company. Appellant's response used profane language and a racial slur, and accused the complainant of harassing him.

The complainant reported the accident and damage to his car to Uber. Uber immediately suspended the complainant's account until the damage to the car was repaired. Uber also suspended appellant's account until his car was repaired. After having his car repaired the complainant sent pictures of the repaired car to Uber who reinstated his account.

The first day after the complainant's account was reinstated, he returned to the airport parking lot to wait for a fare. While he was waiting the complainant and some friends were eating. While eating the complainant heard someone call his name. The complainant turned to see who was calling him, and appellant immediately swung a large flashlight toward the complainant's head, hitting the complainant and rendering him briefly unconscious. The complainant denied attacking appellant in any way, testifying that he had no chance because appellant immediately hit him in the head. Despite knocking the complainant unconscious, appellant continued to beat the complainant. A bystander eventually pulled appellant off the complainant.

The complainant was transported via ambulance to the hospital where he remained for two days. The complainant was diagnosed with a concussion at the time of the injury. At the time of trial the complainant still felt occasionally dizzy, got headaches, and experienced difficulty with balance and memory. The complainant lost most of the sight in his left eye, testifying that, by the time of trial, he had lost 95 percent of his sight in that eye.

Bilal Ahmed, another Uber driver, testified that he heard someone call the complainant's name then saw appellant hit the complainant in the head with the flashlight. Ahmed did not see any altercation between appellant and the complainant before appellant hit the complainant in the head. After the complainant was hit in the head with the flashlight he was incapable of fighting. The complainant was trying to get away from appellant. After the first blow appellant continued to beat the complainant with the flashlight. Ahmed never saw the complainant hit appellant; the complainant was trying to get away from appellant.

When Officer Derrick Lathan of the Houston Police Department arrived on the scene, he saw the complainant on the ground with a bandage wrapped around his head and blood coming out of his head. Paramedics had treated the complainant and told Lathan the complainant had a possible concussion. Lathan testified that appellant still had the flashlight in his hand. Lathan removed the flashlight from appellant's hand and placed appellant in handcuffs. Lathan did so because the dispatch he received reported that a man had been assaulted with a flashlight.

Lathan's body camera video showed that appellant told Lathan that appellant's glasses had been knocked off his face. The video also showed the complainant sitting on the ground with a bandage wrapped around his head.

Houston Police Officer Christopher Schultz also responded to the scene. Schultz testified that the complainant's injuries appeared to be substantial because

3

of the amount of blood that was on his shirt. Schultz collected the flashlight from the scene and placed it in an evidence bag. Schultz testified that the flashlight could be used as a deadly weapon.

Appellant testified, telling a different version of events. With regard to the original accident appellant testified that the complainant's bumper was not damaged; only the license plate was damaged. Appellant offered to pay for the damage without exchanging insurance information. Appellant testified that the complainant initially agreed to accept appellant's payment but returned asking for insurance and contact information in case appellant did not pay. Appellant wanted to avoid reporting the accident to Uber because it would result in suspension of his Uber account while repairs were being made.

As to the day of the offense, appellant testified that he saw the complainant in the airport parking lot and tried to give him cash to pay for his repairs. Appellant was also carrying the flashlight because it was dark. Appellant testified that when the complainant refused his offer of cash, appellant pulled on the complainant in an attempt to get the complainant to take the money. At that time, according to appellant, the complainant slapped appellant in the face causing appellant's glasses to fall off. After the complainant slapped appellant, his flashlight and wallet flew from his hands. Appellant testified that the two men began to fight and that the complainant began to choke appellant. Appellant bit the complainant's thumb to break the complainant's chokehold on him. The complainant kicked appellant's shin causing appellant to fall to the ground. While on the ground appellant picked up the flashlight and started swinging at the complainant until he connected with the complainant's head. Appellant testified that if he did not "do something, [the complainant]'s probably going to come back again." That is when appellant stood up and swung at the complainant and they both ended up on the ground. At that time

4

other people pulled appellant off of the complainant.

Appellant testified that at the time he used the flashlight he was in a fight for his life. Appellant testified he would not have used the flashlight if he did not think it was immediately necessary. Appellant denied hitting the complainant with no provocation, and asserted that the bystanders who testified otherwise were lying.

In rebuttal, the State called Syed Zaidi, another Uber driver who witnessed the incident. Zaidi testified that someone was cursing and calling the complainant's name, then suddenly hit the complainant with a large flashlight. Zaidi was standing about two feet away from the complainant at the time appellant hit him. There was no argument before appellant hit the complainant; it just "suddenly happen[ed]." Zaidi did not see the complainant slap appellant's face or place him in a chokehold.

The jury charge contained an instruction on the use of deadly force to protect oneself. The jury found appellant guilty of aggravated assault as charged in the indictment. By finding appellant guilty as charged the jury rejected appellant's self-defense claim. The trial court assessed appellant's sentence at three years' confinement pursuant to an agreement between appellant and the State.

In a single issue on appeal appellant asserts he suffered egregious harm when the jury was not instructed on the use of non-deadly force to protect oneself.

## ANALYSIS

### I. Standard of Review and Applicable Law

In a criminal case, we review complaints of jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). First, we determine whether error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). Second, we review the record to determine whether sufficient harm was caused by the error to require reversal of the conviction. *Id.*

5

The degree of harm necessary for reversal depends on whether the appellant preserved error by objecting to the charge. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). When charge error is not preserved, as in this case, reversal is not required unless the resulting harm is egregious. *Id.*; *see also* Tex. Code Crim. Proc. art. 36.19.

Charge error is egregiously harmful when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). That is, the error must have been so harmful that the defendant was effectively denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 172. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Under *Almanza*, the record must show that the charge error caused the defendant actual, rather than merely theoretical, harm. *Ngo*, 175 S.W.3d at 750. Neither party has the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

The trial court's charge must fully instruct the jury on the law applicable to the case and apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *see* Tex. Code Crim. Proc. art. 36.14. Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). The application paragraph applies the relevant law, the definitions found in the abstract portion of the charge, and general legal principles to the particular facts of the case. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). Because the application paragraph specifies "the factual circumstances under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge." *Id*. at 367.

**II.   The trial court did not err in failing to include an instruction on the use of non-deadly force.**

The application paragraph of the jury charge contained the following instruction on self-defense:

> If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that the defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against [the complainant]'s use or attempted use of unlawful deadly force, then you should find against the defendant on the issue of self-defense.

A defendant is entitled to an instruction on a defensive issue if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991). On the other hand, if the evidence, viewed in the light most favorable to the defendant, does not establish a defensive issue, the defendant is not entitled to an instruction on the issue. *Id*. Therefore, we must first decide whether there was any evidence that the force used by appellant was not deadly force.

The instant case is governed by *Ferrel v. State*, where the Court of Criminal Appeals held that for a defendant to be entitled to a non-deadly force instruction under section 9.31(a) of the Code of Criminal Procedure, there must have been some evidence that the instrument used—in *Ferrel*, a full bottle of beer; in this case a flashlight—was not capable of causing death or serious bodily injury in the manner of its use or intended use. 55 S.W.3d 586, 591–92 (Tex. Crim. App. 2001). Under those facts, the *Ferrel* court held that because the beer bottle indisputably caused serious bodily injury to the complainant, the defendant by definition used deadly force. *Id*. at 592.

In this case the trial court instructed the jury on self-defense under section 9.32 of the Penal Code. Under this section, a person is justified in using deadly force against another if he would be justified in using force under Section 9.31, if a reasonable person in the actor's situation would not have retreated, and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. Tex. Penal Code § 9.32. Section 9.31(a) of the Penal Code provides that a person is justified in using non-deadly force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. Tex. Penal Code § 9.31(a).

Deadly force is "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." Tex. Penal Code § 9.01. For there to be evidence that appellant did not use deadly force, there must have been evidence that the flashlight was not capable of causing death or serious bodily injury in the manner of its use or intended use. *See Ferrel*, 55 S.W.3d at 591–92.

Under the standard promulgated by the Texas Court of Criminal Appeals, the reviewing court looks at the end result of the act, and if facts are such that the complainant suffers serious injury, then, by definition, the force used was deadly. *Ferrel*, 55 S.W.3d at 592; *Denman v. State*, 193 S.W.3d 129, 134–35 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Therefore, we examine the evidence to determine whether the complainant indisputably suffered "serious bodily injury." *Ferrel*, 55 S.W.3d at 592. If the evidence is undisputed that the complainant suffered serious bodily injury, appellant was not entitled to a non-deadly force instruction. *See Denman*, 193 S.W.3d at 135.

Appellant asserts there was some evidence that the flashlight was not capable

of causing death or serious bodily injury in the manner in which it was used by appellant. Appellant argues that the lack of medical records detailing the extent of the injuries leaves room for doubt that the flashlight was capable of causing death or serious bodily injury in the manner of its use.

"Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(a)(46). Serious bodily injury may be established without a physician's testimony or records when the injury and its effects are obvious. *Blea v. State*, 483 S.W.3d 29, 35 (Tex. Crim. App. 2016).

In this case, the evidence supports the conclusion that the flashlight indisputably caused serious bodily injury. The complainant testified that he spent two days in the hospital recovering from his injuries, which included a concussion, and that months after the incident he still experienced dizziness, headaches, loss of balance, and significant loss of vision. Appellant affirmatively testified that he was in fear for his life. There was conflicting testimony as to who was the aggressor and whether the complainant engaged with appellant before appellant hit him in the head with the flashlight, but the testimony was not disputed that when appellant hit the complainant with the flashlight the result was serious bodily injury. Therefore, we hold that because it is clear that the complainant suffered "serious bodily injury" as contemplated by the statutory language, appellant necessarily used deadly force and was not entitled to an application paragraph instruction as to non-deadly force. *See English v. State*, 171 S.W.3d 625, 628 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (blow from baseball bat causing pain, a large gash requiring seven stitches, a scar, bruising, swelling, and a concussion caused serious bodily injury); *Powell v. State*, 939 S.W.2d 713, 718 (Tex. App.—El Paso 1997, no pet.) (concussion, which

caused memory loss considered to be serious bodily injury).

Accordingly, appellant was not entitled to an instruction on the use of non-deadly force, and we overrule his sole issue. *See Denman*, 193 S.W.3d at 135.

## CONCLUSION

Having overruled appellant's sole issue on appeal we affirm the trial court's judgment.

/s/ Jerry Zimmerer
   Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — Tex. R. App. P. 47.2(b).